RECORD NO. 14-4158

In The

# United States Court Of Appeals
## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

## JOKWAN LAMAR HARVEY,

*Defendant – Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT WILMINGTON

_____

BRIEF OF APPELLANT

_____

**Mark D. Stewart**
**BURCH LAW OFFICE**
**313 South Evans Street**
**Greenville, NC 27858**
**(252) 830-5291**

*Counsel for Appellant*

# <u>TABLE OF CONTENTS</u>

**Page:**

TABLE OF AUTHORITIES .................................................................... ii

INTRODUCTION .............................................................................1

JURISDICTIONAL STATEMENT ........................................................2

STATEMENT OF THE ISSUES............................................................3

STATEMENT OF THE CASE ..............................................................3

    Statement of the Facts...................................................................9

SUMMARY OF THE ARGUMENT ....................................................10

ARGUMENT ...................................................................................11

    Standard of Review......................................................................11

CONCLUSION ................................................................................17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# <u>TABLE OF AUTHORITIES</u>

**Page(s):**

## <u>CASES</u>:

*Apprendi v. New Jeresy*,
    530 U.S. 466 (2000)..........................................................................6

*Austin* v. *United States*,
    513 U.S. 5 (1994)...........................................................................15

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990) ...........................14

*Gall v. United States*,
    128 S. Ct. 586, 169 L. Ed. 2d 445 (2007)................................................1, 13

*Hurtado v. People of California*,
    110 U.S. 516 (1884).........................................................................6

*In re Winship*,
    397 U.S. 358 (1970)........................................................................6

*Koon v. United States,*
    518 U.S. 81, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996) ........................13, 14

*Ornelas* v. *United States*,
    517 U. S. 690 (1996).......................................................................16

*Pierce v. Underwood*,
    487 U.S. 552, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988) ..................... 13-14

*Rita v. United States*,
    127 S. Ct. 2456 (2007)....................................................................14

*United States v. Bailey*,
    975 F.2d 1028 (4th Cir. 1992) ..........................................................3, 11, 12

*United States v. Bajakajian*,
    524 U.S. 321 (1998).....................................................................................15

*United States v. Booker*,
    543 U.S. 220 (2005)...............................................................5, 13, 14, 16

*United States v. Carter*,
    564 F.3d 325 (2009) ...........................................................................1, 13

*United States v. Castner,*
    50 F.3d 1267 (4th Cir. 1995) .............................................................12

*United States v. Chatterji,*
    46 F.3d 1336 (4th Cir.1995) .............................................................11

*United States v. Harris*,
    597 F.3d 242 (5th Cir. 2010) ..............................................................5

*United States v. Hoyle,*
    33 F.3d 415 (4th Cir.  1994) ...............................................................7

*United States v. Hughes*,
    396 F.3d 374 (4th Cir. 2005) ............................................................12

*United States v. Klein*,
    543 F.3d 206 (5th Cir. 2008)..............................................................14

*United States v. Miller*,
    316 F.3d 495 (4th Cir. 2003) ................................................. 4, 11-12

*United States v. Olis*,
    429 F.3d 540 (5th Cir. 2005)................................................................1

*United States v. Saacks*,
    131 F.3d 540 (5th Cir. 1997) ............................................................14

*United States v. Wilkinson*,
  590 F.3d 259 (4th Cir. 2010) ..........................................................................14

*Williams v. New York*,
  337 U.S. 241, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949) ....................................1

**STATUTES:**

18 U.S.C. § 2 ....................................................................................................10

18 U.S.C. § 1001 ................................................................................................9

18 U.S.C. § 1028A(a)(1) ....................................................................................9

18 U.S.C. § 1029(a)(2) ......................................................................................9

18 U.S.C. § 1029(a)(3) ......................................................................................9

18 U.S.C. § 1512 ..............................................................................................10

18 U.S.C. § 3742(e) ..........................................................................................13

28 U.S.C § 1291 ................................................................................................2

28 U.S.C. § 1651 ................................................................................................2

28 U.S.C. § 2241 ................................................................................................2

28 U.S.C. § 2255 ................................................................................................2

**CONSTITUTIONAL PROVISION:**

U.S. Const. amend VI ....................................................................................12, 16

**SENTENCING GUIDELINES:**

U.S.S.G. § 2B1.1.......................................................................................*passim*

U.S.S.G. § 2B1.1(b)(1) ...........................................................................5

U.S.S.G. § 2B1.1(b)(1)(G)...............................................................14, 16

U.S.S.G. § 2B1.1(b)(2)(a)........................................................................8

**OTHER AUTHORITY:**

Prosecutorial Remedies and Other Tools to end the
Exploitation of Children Today Act of 2003,
§ 401(d)(1) ............................................................................................13

# **INTRODUCTION**

This case centers around the Defendant's plea of guilty to the use of unauthorized access devices and aggravated identity theft, which, at sentencing, resulted in unsubstantiated findings of the number of victims and a misguided calculation of loss; these findings lead to an incorrect guideline range and a sentence far above what the Defendant should have received. It is not disputed that once convicted the nature of the proceedings and evidentiary rules change and that sentencing judges "exercise a wide discretion in the types of evidence they may consider when imposing sentence…" *Williams v. New York*, 337 U.S. 241, 247, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949). However, there is by necessity, in a case such as this, a line which must be drawn and that line is at intended loss. There is no question that "in reviewing any sentence, 'whether inside, just outside, or significantly outside the Guidelines range,' we apply a 'deferential abuse-of-discretion standard.'" *United States v. Carter*, 564 F.3d 325, 328 (2009) quoting *Gall v. United States*, 128 S. Ct. 586, 591, 169 L. Ed. 2d 445 (2007). However, the Court's application of the guidelines are reviewed *de novo* and the findings of fact for clear error. *See United States v. Olis*, 429 F.3d 540, 545 (5th Cir. 2005). Moreover, an error in applying the guidelines is a significant procedural error that constitutes an abuse of discretion. *See Gall*, 128 S. Ct. at 597. In this case the Defendant vehemently objected to the number of victims and the illusive nature of

the intended loss amount. Nonetheless the Court ruled that the intended loss was greater than $200,000, adding 12 sentencing points. The district court also found, over the Defendant's objection that there were more than 10 victims, further increasing sentencing points.  These findings, though, were contrary to the government's witness who stated in regards to counsel's question "is it your contention that these cards were possessed but not used?" that "I have no evidence that they were used." J.A. 96-7.  Also, there was no evidence presented at sentencing about who actually owned the account numbers for purposes of identifying victims, the Defense position is that the victim banks own the card numbers not the individual and therefore only a bank, which suffered an actual loss may be counted as a victim.

## JURISDICTIONAL STATEMENT

Harvey appeals from the district court's sentence filed in the United States District Court for the Eastern District of North Carolina on February 14, 2014 sentencing Mr. Harvey to 84 months in prison and three years of supervised release. Harvey filed his Notice of Appeal on February 25, 2014. This Court has jurisdiction under 28 U.S.C § 1291, and the district court had jurisdiction under 28 U.S.C. §§ 1651, 2241, and 2255.

## STATEMENT OF THE ISSUES

Did the district court apply the wrong law in determining the guidelines under United States Sentencing Guidelines § 2B1.1 by sentencing the Defendant using intended loss rather than actual loss and by failing to take into account the evidence presented or lack of evidence regarding whether certain access device numbers were used? Did the district court wrongly calculate who was a victim and unjustly enhance the Defendant's sentence based on erroneous numbers? Is "intended loss" so vague and overbroad that the amount of intended loss in every financial situation by necessity is infinite?

## STATEMENT OF THE CASE

Mr. Harvey's sentence was contrary to law specifically *United States v. Bailey*, 975 F.2d 1028 (4th Cir. 1992). In *Bailey* the court held that intended losses should be held to only attempt cases, the instant case was not an attempt case. The facts in *Bailey* are on point with Mr. Harvey's. Mr. Bailey defrauded investors in concert promotion schemes. After pleading guilty Mr. Bailey was sentenced based upon intended or potential loss of more than $16 million, when in actuality he only profited $8.8 million in the scheme. The court reversed the sentencing and remanded with instructions for the sentencing court to use the actual loss amount rather than the intended loss amount. In the present case the Defendant is entitled to the same relief. At sentencing in Mr. Harvey's case, the Court enhance Mr.

3

Harvey's sentence by 12 base level points based upon the court's finding of more than $200,000 in intended loss, whereas it should have only been enhanced by 6 points based on actual loss. Mr. Harvey's contention is that intended loss is a misnomer; in any intended loss case, the burden is placed on the Defendant to refute the intended loss. Intended loss can be presumed and calculated even if it was impossible to achieve. U.S.S.G. § 2B1.1 Application note 3(A)(ii). The intended loss "will be used if it is greater than the actual loss, even if this exceeds the amount of loss actually possible, or likely to occur, as a result of the defendant's conduct," *Miller*, 316 F.3d at 502. That is tantamount to charging someone with a count of attempted murder for each bullet he has in a firearm notwithstanding how many persons are around when the gun is discharged or how many shots were actually fired. If two people alone get into a six-shooter gunfight in the desert the prevailing gunner should not be convicted of one count of murder and 5 counts of attempted murder because of the other bullets in the gun; but that is exactly the outcome in financial crimes with dealing with intended loss. Moreover, the actual intended loss in any financial crime similar to the instant case is as much as one can obtain. Any person engaging in fraudulent credit card activity is not internally capping the amount of financial benefit he wishes to acquire, he wants as much as he can get; that is the true intended loss, and trying to quantify this amount in court is arbitrary and counter to just sentencing. Case law has stated that

a sentencing judge need only make a reasonable estimate of the loss. "A special rule provides that, in cases involving an 'unauthorized access device,' a term that includes credit cards, 'loss includes any unauthorized charges made with the…unauthorized access device and shall not be less than $500 per access device.' The district court 'need only make a reasonable estimate of the loss' based upon the evidence." *United States of America v. Harris*, 597 F.3d 242, 249 (5th Cir. 2010) quoting U.S.S.G. § 2B1.1(b)(1) (internal citations omitted). The guideline manual sets a floor for intended loss at $500, that is, if the access device is used, unless there is an actual loss greater than $500, then the actual loss is used. Also, if a credit limit is extended to a fraudulent account, the maximum credit limit is then used for intended loss, notwithstanding any actual loss. Leaving the jostling back and forth from actual loss to intended loss erodes the continuity in sentence that the Guidelines Commission and Legislature work achieve. "The other approach, which we now adopt, would (through severance and excision of two provisions) make the Guidelines system advisory while maintaining a strong connection between the sentence imposed and the offender's real conduct — a connection important to the increased uniformity of sentencing that Congress intended its Guidelines system to achieve." *Booker* at 246. The shifting calculation from intended to actual loss smacks of unjustness and a violation of due process. "The principles, then, upon which the process is based, are to determine whether it is "due process" or not, and

5

not any considerations of mere form. Administrative and remedial process may be changed from time to time, but only with due regard to the landmarks established for the protection of the citizen." *Hurtado v. People of California*, 110 U.S. 516 527, 528 (1884) quoting Mr. Cooley, Constitutional Limitations, 356. The issue here is not one that the intended loss should have gone to a jury as an essential element of the underlying case, *See Apprendi v. New Jeresy*, 530 U.S. 466 (2000), rather the Defendant's position is that even if the intended loss was submitted to a jury it would be an impossible number to quantify other than to say he intended to obtain as much as possible. Furthermore, intended loss should not be a question for a sentencing judge to decide either. The vagueness of the phrase intended loss renders U.S.S.G. § 2B1.1 n.3(F)(i) void.  However, reasoning from *Apprendi* should still apply in the instant case, not that intended loss should go to a jury, but that its an unattainable number subject to whims and not in fact a fact that can be proven. "We did not, however, there budge from the position that (1) constitutional limits exist to States' authority to define away facts necessary to constitute a criminal offense, and (2) that a state scheme that keeps from the jury facts that "expos[e] [defendants] to greater or additional punishment," may raise serious constitutional concern." *Aprrendi* at 486 quoting *In re Winship*, 397 U.S. 358 (1970) (internal citations omitted.) The *Apprendi* court uses the term "facts" but trying to ascertain a reasonable monetary figure a defendant *intended* to illegally

6

obtain is not a fact, its an unquantifiable guess, unless the sum is infinity. If a district court decides to use intended loss instead of actual, ascertainable, loss there is only one possible, reasonable answer, and that is the defendant intended to receive as much ill-gotten gain as he could. In an early case decided by the Fourth Circuit, a district court sentence was vacated and remanded for the inclusion of interest in determining loss amount for sentencing purposes. "The district court erred by including interest in its determination of loss for sentencing purposes…" *United States v. Charlene Hoyle, United States of America v. Cheryl McCullough Benton*, 33 F.3d 415 (4th Cir. 1994). It stands to reason that if interest, a seemingly easy amount to surmise, is beyond the scope of the sentencing court, intended loss should not even be a term used during sentencing. The most just way, then, to determine an appropriate sentence in a case such as Mr. Harvey's is to readjust the guidelines to reflect the seriousness of the actual loss and abandon the idea of intended loss.

Furthermore, by applying the guideline manual's $500 intended loss minimum multiple times to one account number there is double and triple counting for purposes of intended loss. The government's witness, Agent Rodriguez's testimony, made clear that the $500 minimum pursuant to U.S.S.G. § 2B1.1 application note 3(F)(i), was applied to every attempt that was made using the same card number, significantly increasing the Defendant's sentencing level using

7

the same account number. This double and triple counting is comparable to enhancing drug weight each time a dealer attempted to sell a specific quantity of a drug and thereby risk double counting.

The Defendant further contends that the dollar amount attributed to each access device possessed but not used was miscalculated and incorrectly applied. The testimony was uncontroverted that there was as many as 161 numbers possessed but not used J.A. 96-7. The Defendant asserts that pursuant to U.S.S.G. § 2B1.1 application note 3(F)(i) the dollar amount attributed to those numbers possessed but not used should have been $100 instead of $500. The $400 difference in the 161 possessed-but-not-used account numbers would subtract $64,400 from the intended loss, brining the claimed intended loss to less than $200,000.

The calculation in Mr. Harvey's of the number of victims was also incorrect. The district court found that there were more than 10 victims affected by Mr. Harvey's actions; this finding, in accordance with U.S.S.G. § 2B1.1(b)(2)(a) increased the base level by 2 points. The basis for the calculation of the number of victims was the identifiable persons associated with a certain access number or credit card number. None of these persons appeared in court to testify and the government's witness did not provide any testimony regarding harm to them. The only testimony was that the banks, which issued the numbers and presumably owns

8

the numbers, suffered financial loss which is documented in the pre-sentence report J.A. 148. The Defendant was ordered to pay restitution to the these 7 financial institutions because they are the only ones who suffered a loss. Although the Defendant does not deny that one debit card was stolen in his activity which resulted in another victim, though it does not appear any restitution was owed to her, bringing the total number of victims to 8. Due to no evidence being presented regarding loss or harm to any victim other than the banks and the one individual, Mr. Harvey's sentence should be vacated.

Given the overbroad and vague idea of intended loss, the double counting of intended loss numbers, and the misapplication of U.S.S.G. § 2B1.1 application not 3(F)(i), and the lack of evidence as to more than 10 victims, Mr. Harvey's sentence should be reversed and resentenced pursuant to the actual harm he caused rather than what a sentencing judge believes the Defendant intended.

### **Statement of the Facts**

On February 19, 2013, Jokwan Harvey and one other individual were named in an eight count indictment charging them with use of unauthorized access devices in violation of 18 U.S.C. § 1029(a)(2), possession of 15 or more unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3), aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), making materially false statements in violation of 18 U.S.C. § 1001, and obstruction of justice and aiding

and abetting in violation of 18 U.S.C. §§ 1512 and 2. One June 3, 2013 Mr. Harvey

entered a plea of guilty to counts 1 and 3 of the indictment. On October 9, 2013 at

a scheduled sentencing hearing, Mr. Harvey expressed his desire to relieve then-

counsel of his duty to represent Mr. Harvey, and asked the court to appoint new

counsel. During the October 9, 2013 hearing, the court allowed then-counsel to

withdraw and the court appointed new counsel to represent Mr. Harvey for the

sentencing hearing, which was then scheduled for December 11, 2013. Sentencing

was eventually held on February 14, 2014. At sentencing the Defendant objected to

several aspects of the pre-sentence report, mainly as to the amount of loss and

actual number of victims, and the government put on evidence from agent Paul

Rodriguez. After the presentation of evidence and argument from counsel, the

court denied the Defendant's objections motion for downward departure pursuant

to U.S.S.G. § 2B1.1 Application note 20(c) and sentenced Mr. Harvey to 84

months in the Bureau of Prisons and 3 years of supervised release. On February 25,

2014 the Defendant entered notice of appeal.

## SUMMARY OF THE ARGUMENT

Jokwan Harvey, the defendant in the instant case, was charged in a scheme

to use unauthorized access devices to make purchases; he subsequently pleaded

guilty in the Eastern District of North Carolina. The facts of the case were complex

and finding an accurate number of victims and a reasonable loss amount were

10

contentious. A sentencing hearing was held on February 14, 2014 during which the Defendant objected to the pre-sentence report's summation of the loss amount and the total number of victims. The United States government created a spreadsheet to aid its witness, Agent Rodriguez, at the hearing in summarizing the activity of the Defendant. The Defense, on cross, and during argument, pointed out that the loss amount is miscalculated based on U.S.S.G. § 2B1.1 and that the number of victims was also incorrect. The district court overruled the Defendant's objections and recommended 60-month sentence and instead sentenced the Defendant to 84 months incarceration and 3 years of supervised release. Mr. Harvey contends that the district court committed procedural error in calculating the correct guidelines and that the sentencing guidelines' "intended loss" language is unconstitutionally vague and overbroad and should not be relied upon as a sentencing factor or enhancement. Mr. Harvey contends that the district court's sentence should therefore be reversed.

## ARGUMENT

### Standard of Review

Mr. Harvey's sentence was handed down based in violation of precedent and law and was based on a misapplied calculation of loss and should be reviewed *de novo* and vacated. *See United States v. Bailey*, 975 F.2d 1028 (4th Cir. 1992), *United States v. Chatterji*, 46 F.3d 1336, 1340 (4th Cir.1995), *United States v.*

*Miller*, 316 F.3d 495, 498 (4th Cir. 2003). However, the Fourth Circuit has also held that intended loss may be used to calculate sentencing in some instances. *See United States v. Castner*, *United States v. Sechler*, 50 F.3d 1267 (4th Cir. 1995). The case at bar though is quite distinguishable. In *Castner* the defendant defrauded the United States by fraudulently inflating subcontractor's bids without authority and received the difference between what the subcontractors bid and what the defendant said they bid. The difference as it relates to intended loss is, in the case at bar there is no quantifiable number which can be shown that Mr. Harvey intended. In *Castner*, there was a readily provable number, which the defendant tried to receive. In *Bailey*, as in the instant case the intended loss is simply a number supposed, basically a supposition relying upon the fraud's perpetual continuation, rather than a readily available amount. The same distinction is true of the court's holding in *United States v. Hughes*, 396 F.3d 374 (4th Cir. 2005) in which a defendant transferred assets without the bankruptcy court's approval. There, as in *Castner*, there is a readily available, quantifiable amount able to be shown to the court that the defendant intended to hide. Because there is no set amount which can be proven, without wild speculation in Mr. Harvey's case, the phrase "intended loss" is too vague and in violation of the Sixth Amendment's due process clause and should be reviewed *de novo*.

As for the other issues the Defendant raises on appeal he contends the standard of review will be both abuse of discretion and *de novo*. "In reviewing any sentence, 'whether inside, just outside, or significantly outside the Guidelines range,' we apply a 'deferential abuse-of-discretion standard.'" *United States v. Carter*, 564 F.3d 325, 328 (2009) quoting *Gall v. United States*, 128 S. Ct. 586, 591, 169 L. Ed. 2d 445 (2007). The Supreme Court has heard several cases regarding the standard of review in light of *United States v. Booker*, 543 U.S 220 (2005) and has stated,

> Simply stated, *Booker* replaced the *de novo* standard of review required by 18 U.S.C. § 3742(e) with an abuse-of-discretion standard that we called "reasonableness" review. 543 U.S., at 262, 125 S. Ct. 738. We noted in *Booker* that the *de novo* standard was a recent addition to the law. Prior to 2003, appellate courts reviewed sentencing departures for abuse of discretion under our decision in *Koon v. United States,* 518 U.S. 81, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996). In 2003, however, Congress overruled *Koon* and added the *de novo* standard to § 3742(e). *See* Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003, § 401(d)(1), 117 Stat. 670. Recognizing that "the reasons for this revision— to make Guidelines sentencing even more mandatory than it had been— ... ceased to be relevant" in light of the Court's constitutional holding, *Booker* excised the portion of § 3742(e) that directed courts of appeals to apply the *de novo* standard. 543 U.S., at 261, 125 S. Ct. 738. Critically, we did not touch the portions of § 3742(e) requiring appellate courts to "give due regard to the opportunity of the district court to judge the credibility of the witnesses," to "accept the findings of fact of the district court unless they are clearly erroneous," and to "give due deference to the district court's application of the guidelines to the facts." By leaving those portions of the statute intact while severing the portion mandating a *de novo* standard of review, *Booker* restored the abuse-of-discretion standard identified in three earlier cases: *Pierce v. Underwood*, 487

13

U.S. 552, 558-560, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988), *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 403-405, 110 S.Ct. 2447, 110 L. Ed. 2d 359 (1990), and *Koon. See Booker,* 543 U.S., at 260, 125 S.Ct. 738.

*Rita v. United States*, 127 S. Ct. 2456 (2007).

In a case such as Mr. Harvey's the Fifth Circuit has said, "…the finding as to the amount of loss is a factual finding, and we cannot reassess the evidence but owe the finding deference. We can, however, consider *de novo* how the court calculated the loss, because that is an application of the guidelines, which is a question of law." *United States v. Klein*, 543 F.3d 206, 214 (5th Cir. 2008) quoting *United States v. Saacks*, 131 F.3d 540, 542-3 (5th Cir. 1997). In the present case the sentencing hearing did not provide (and could never provide) any substantive proof of the "intended loss" of the Defendant. "A sentencing court may give weight to any relevant information before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support accuracy." *United States v. Wilkinson*, 590 F.3d 259, 269 (4th Cir. 2010). In Mr. Harvey's case the district court found that the intended loss amount was greater than $200,000, and under U.S.S.G. 2B1.1(b)(1)(G) increases the sentencing level by 12 points, but that figure was a miscalculation based upon the government-created spreadsheet which applied U.S.S.G.  § 2B1.1's application note 3(F)(i)'s $500 intended loss amount multiple times in some instances. The Defendant entered into a plea, but contested many aspects of the pre-sentence reports calculations of the intended loss,

14

therefore the government called an agent to the stand to present evidence. However, the evidence lacks any reasonable indicia of reliability regarding the Defendant's intent. Further, whereas on appeal the evidence will not be reassessed, inasmuch as there is a full record of the testimony of the only witness, the evidence can be looked at to determine whether any evidence was presented and to what degree. Therefore in reviewing the present case the record of the witness' testimony should be reviewed for an abuse of discretion standard, however, keeping those facts in mind a *de novo* standard must be applied to how those facts applied to the guidelines range. It is also important to note that the intended loss language in U.S.S.G. § 2B1.1 acts to determine the applicable punishment range of the Defendant. However, using intended loss easily pushes a defendant's sentence excessively high in relation to the charged criminal conduct. "'The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish.'" *United States v. Bajakajian*, 524 U.S. 321, 334 (1998) quoting *Austin* v. *United States*, 513 U.S. 5 (1994). In *Bajakajian* the defendant attempted to leave the United States with more than $10,000 in cash but failed to report to the proper authority. Upon conviction he was ordered to forfeit more than $347,000. Because there was a constitutional question relating to the facts of the case the Supreme Court, over the argument of

15

the respondent, applied a *de novo* standard of review citing *Ornelas* v. *United States*, 517 U. S. 690, 697 (1996).

In the instant case, *de novo* review is appropriate as the vagueness of intended loss is a violation of the Sixth Amendment to the United States Constitution's due process clause and therefore a constitutional question despite the holding in *Booker* that the guidelines are advisory only. Even though the guidelines are no longer mandatory sentences, the sentencing courts are still required to find the correct guideline range and from there fashion a sentence. If the starting point for fashioning a sentence is in violation of due process the remainder of the sentence is poisoned and should be vacated. In the instant case the starting point for sentencing as the district court found was a base offense level of 22 and criminal history category of V, that was using the $200,000 intended loss figure found in U.S.S.G. § 2B1.1(b)(1)(G). However, if only proven actual loss was the standard used to determine the starting point for sentencing it would be 6, for a base level of 16 which would amount to a sentence 36 months less if calculated from the bottom of each guideline range.

16

## **CONCLUSION**

For the reasons stated above the defendant, Jokwan Harvey respectfully requests that this court reverse the defendant's sentence because of procedural error and the unconstitutionally vague language of U.S.S.G. § 2B1.1 Application note 3(F)(i) and remand the case for re-sentencing.

This the 20th day of June, 2014.

/s/ Mark D. Stewart
MARK D. STEWART
Attorney for Defendant
Burch Law Office
313 S. Evans St.
Greenville, NC 27858
mark@burchlawoffice.com
252-830-5291
252-830-1422 (fax)
NC State Bar No. 37072
CJA Appointed